UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

JUNE-IL KIM                                              :

              Plaintiff,                          :

     -against-                                      :

SUK INCORPORATED D/B/A RAINBOW LIMO,:
SEONGBAE DAN, SOONKIL CHO
                                  :

             Defendants.                      :

                                  :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2 - 22 -13

12 Civ. 1557 (ALC)

**OPINION AND ORDER**

**ANDREW L. CARTER, United States District Judge:**

     Plaintiff failed to bring Counts 4 and 5 of the Complaint in a timely manner. The Court needs additional information to determine if Count 9 was brought in time. Counts 4 and 5 are dismissed, and the plaintiff is granted leave to amend the Complaint's allegations in support of Count 9.

BACKGROUND

I.  Procedural Background

     Defendants SUK Incorporated, d/b/a Rainbow Limo, Seongbae Dan and Soonkil Cho ("Defendants") bring this motion to dismiss certain claims put forth in Plaintiff's Complaint. Specifically, they seek dismissal of Counts 4 and 5 brought under the New York Franchise Sales Act, *see* N.Y. General Business Law Art. 33 §§ 683, 687, as untimely, and Count 9 brought under the Employees Retirement Insurance Security Act of 1974 (ERISA), *see* 29 U.S.C. 1001 *et seq.*, as untimely and failing to state a claim. For the reasons stated below, Defendants' Partial Motion to Dismiss is granted in part and denied in part, pending leave to amend the Complaint's allegations in support of Count 9.

1

II. Factual Background

June-Il Kim (Kim) worked as a black car driver of defendant SUK Incorporated ("SUK"). Defendant SUK owns and operates a car service in New York, with operations in New York, New Jersey and Connecticut. Defendants Dan, as the principal of defendant SUK, and Cho, as a SUK employee acting the direction of SUK and Defendant Dan, are sued in their individual capacity.

Kim alleges that he worked at SUK since 2000.  In 2004, he alleges that Defendants forced him to sign the signature page of an unknown document.  Plaintiff alleges that he was threatened with termination if he did not sign the page.  That document, he learned in 2010, upon his termination from SUK was a Franchise Agreement.  Kim claims that he did not receive the full Franchise Agreement until he was terminated and he did not receive or review a franchise prospectus or financial disclosure document (collectively, "Franchise Documents") prior to signing.  He further alleges that, at some unspecified date, he was required to pay Defendants $10,000 for the cost of the franchise fee, "without receiving, or reviewing the [Franchise Documents] as required by New York and federal laws." (Compl. ¶ 34).  Kim alleges that Defendants were responsible for his working conditions, his pay and he was under their direct supervision and control.  (Compl. ¶¶ 69-76).  In 2010, Defendants fired Kim for violation of dress code and mishandling of a client's payment.  (Compl. ¶ 88).  Kim alleges that these reasons are pretext, and he was really fired because of his efforts to engage in labor organizing over working conditions.  (Compl. ¶ 86-88).  Kim alleges that he suffered physical violence, at the hands of Defendant Cho, directed by Defendant Kim, in an effort to prevent organizing activity. (Compl. ¶¶ 83, 86).  Plaintiff filed his Complaint on March 2, 2012.

2

On May 30, 2012, Defendants filed a motion to dismiss Counts 4, 5, and 9 as untimely under their relevant statutes.  Defendants also contended that Count 9 does not state a claim because it does cite the ERISA provision that Defendants allegedly violated.

III. Standard of Review - Motion to Dismiss

"To survive a motion to dismiss, a claim must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, (2007)). "In considering a motion to dismiss ... the court is to accept as true all facts alleged in the complaint," *Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 237 (2d Cir. 2007 (citing *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 87 (2d Cir.2002)), and must "draw all reasonable inferences in favor of the plaintiff." *Id.* (citing *Fernandez v. Chertoff,* 471 F.3d 45, 51 (2d Cir.2006)).

Typically, upon a defendant's motion to dismiss for failure to state a claim, the court must limit itself "to a consideration of the facts that appear on the face of the complaint." *Vollinger v. Merrill Lynch & Co., Inc.,* 198 F. Supp. 2d 433, 438 (S.D.N.Y. 2002) (quoting *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 779 (2d Cir.1984)).  However, the court can also consider any documents attached to the complaint as exhibits or incorporated into the complaint by reference, *id.* (citing *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,* 102 F.3d 660, 662 (2d Cir. 1996), if "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) (emphasis in original).

A complaint is inadequately pled if it "merely offers labels and conclusions or a formulaic recitation of the elements of a cause of action." *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d at 237 (internal quotation marks and citations omitted). *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555), or if it does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). Therefore, on a motion to dismiss, "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." *Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir. 2006) (internal quotation marks and citation omitted).

DISCUSSION

I.  New York Franchise Act Claims (Counts 4 and 5)

Plaintiff brings claims under New York General Business Law (GBL) Art. 33 §§ 683 (disclosure requirements)[1] and 687 (fraudulent and unlawful practices).[2] Claims under this section are subject to a three-year statute of limitations from the date of the violation.[3]

---

[1] A franchise which is subject to registration under this article shall not be sold without first providing to the prospective franchisee, a copy of the offering prospectus, together with a copy of all proposed agreements relating to the sale of the franchise at the earlier of (a) the first personal meeting between the franchisor or its agent and the prospective franchisee, (b) at least ten business days prior to the execution of a binding franchise or other agreement, or (c) at least ten days prior to the receipt of any consideration in connection with the sale or proposed sale of a franchise. For the purposes of this chapter, the words: (i) "first personal meeting" shall mean the first face to face meeting between a franchisor or franchisor's agent or any representative or employee thereof and a prospective franchisee which is held for the purpose of discussing the sale or possible sale of a franchise; (ii) "other agreement" shall mean an agreement imposing a binding legal obligation on such prospective franchisee, about which the franchisor, franchise sales agent, or any agent, representative or employee thereof, knows or should know, in connection with the sale or proposed sale of a franchise; and, (iii) "receipt of any consideration" shall mean the payment by a prospective franchisee, about which the franchisor, franchise sales agent, or any agent, representative or employee thereof, knows or should know, of any consideration in connection with the sale or proposed sale of a franchise.

The essence of these claims seems to be that Plaintiff was coerced into signing the Franchise Agreement without the benefit of the Franchise Documents.  As a private plaintiff seeking relief, Plaintiff's claim is untimely if brought more than three years after the purported violation of the Franchise Sales Act.  *Fantastic Enterprises, Inc. v. S.M.R. Enterprises, Inc.*, 143 Misc. 2d 124, 129 (1988) ("The present action. . . is brought by a private party who specifically complains of violations of the Franchise Sales Act [and] falls squarely into the parameters subject to the Act's express three-year Statute of Limitations. . .")

Plaintiff contends that the statute of limitations has not run because he did not receive the Franchising Documents until 2010 when he was fired.  The case law is quite clear that the New York Franchise Sales Act does not incorporate a "date of discovery" rule for fraud-based claims as the one Plaintiff alleges.  *G.L.M. Sec. & Sound, Inc. v. LoJack Corp.*, No. 10-cv-4701(JS)(ARL), 2012 WL 4512499, *5 (E.D.N.Y. Sept. 28, 2012) ("[Plaintiffs] claim that the

---

McKinney's General Business Law § 683(8)

[2] It is unlawful for any person to make any untrue statement of a material fact in any application, notice, statement, prospectus or report filed with the department under this article, or wilfully to omit to state in any such application, notice, statement, prospectus or report any material fact which is required to be stated therein, or to fail to notify the department of any material change as required by this article.

It is unlawful for a person, in connection with the offer, sale or purchase of any franchise, to directly or indirectly:

(a) Employ any device, scheme, or artifice to defraud.

(b) Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. It is an affirmative defense to one accused of omitting to state such a material fact that said omission was not an intentional act.

(c) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

McKinney's General Business Law § 687(1), (2)

[3] "An action shall not be maintained to enforce a liability created under this section unless brought before the expiration of three years after the act or transaction constituting the violation."  McKinney's General Business Law § 691.

relationship blossomed into a franchise "when it learned" of the extra fee is in truth a request for a discovery based toll on the statute of limitations, a toll which is not available under New York law."); *Fantastic Enterprises, Inc. v. S.M.R. Enterprises, Inc.*, 143 Misc.2d 124, 129 (N.Y. Sup. 1988) ("It should also be noted that no "date of discovery" rule is provided for in General Business Law § 691(4). . ."). There is no continuing obligation to correct misrepresentations or to distribute franchising materials. Instead, the time on the statute of limitations necessarily starts running at the start of a defendant's violation.

Contrary to Defendants' reading, however, the statute of limitations does not always begin to run on the date of the agreement's execution. *Vysovsky* did not hold that the date the parties entered the agreement necessarily starts the time. To the contrary, it refutes the idea that "the language of GBL § 691(4) is to be ignored in cases, such as the present, where the limitation period should run, as required by the statute, from the transaction constituting the violation," where the triggering transaction is not the inception of the franchise. *Vysovsky v. Glazman*, No. 01-Civ-2531, 2011 WL 1842297, *3 (S.D.N.Y. May 11, 2011). Indeed, in *Vysovsky*, the transaction that triggered the three-year time frame was the event that constituted a violation of GBL § 683(1), the expiration of the franchisor's registration. *Id.* Thus, as all the plaintiffs paid the franchise fee after defendant franchise let the state registration lapse, which was within three years of their complaint, dismissal as untimely was improper.

A. Count 4: Section 683 Claim

The proper consideration is the time of the violative transaction. Using Plaintiff's rationale, the disclosure requirement was not breached until 2010 when he finally received a full copy of the Franchise Agreement. But that defies logic. Section 683(8) gives rise to a civil claim for non-disclosure if the franchisor sells a franchise without first providing the Franchise

6

Documents to the prospective franchisee. Thus, in this case, the time of the violation is the time of the sale, when Defendants allegedly failed to provide the required franchise documents. Plaintiff signed the Agreement in 2004 and if that is the basis of his claim, the three-year statute of limitations has run and his claim under GBL § 683(8) is time-barred.

Plaintiff, however, also alleges that he was required to pay a $10,000 fee, which was the cost of the franchise. Compl. ¶ 34. A payment to Defendants would qualify as "receipt of any consideration" within the meaning of GBL § 683(iii).[4] The Complaint does not further allege, however, that the payment was made after March 2, 2009, the only way Plaintiff's payment could satisfy the statute of limitations. "Had [Plaintiff alleged that the fee was not paid] until some date within the limitations period, the Court would have to accept that allegation as true, however unlikely it might appear, for purposes of a motion to dismiss. Significantly, [Plaintiff] makes no such allegation. Under these circumstances, no rule of law requires the Court to indulge the assumption, which cannot fairly be inferred from any of the facts alleged in the complaint. . ." *Downes v. JP Morgan Chase & Co.*, 03 Civ. 8991 (GEL), 2004 WL 1277991, *4 n.5 (S.D.N.Y. June 8, 2004). As written, Plaintiff's claim does not allege a transaction that allows his claim to come within the appropriate statute of limitations.[5] Thus, the claims under § 683 are time-barred and must be dismissed.

   B.  Count 5: Section 687 Claim

---

[4] See note 1, *supra*.

[5] As an additional nail in the coffin of Plaintiff's Franchise Act claims, the Complaint later contradicts that any franchise payment was ever made. Compl. ¶ 81 ("Mr. Kim did not invest any of his personal money in SUK."). Thus, the Court should not even attempt a liberal reading of the Complaint and Plaintiff's claim is time-barred.

Similarly, Plaintiffs claim under GBL § 687 was brought too late.  Relief is available under section 687(2) to private litigants for misrepresentations "in connection with the offer, sale or purchase of any franchise."  If Kim seeks this basis for his claim, then, the violation did not occur when he received a copy of the Franchise Agreement in 2010 but occurred when he signed the signature page (and did not receive the full agreement in conjunction therewith) in 2004.  The 2004 signing without the benefit of the Franchise Documents was the time at which Defendants allegedly misrepresented the Franchise Agreement and for which Plaintiffs could establish a basis for a claim that Defendants "[e]mploy[ed] any device, scheme, or artifice to defraud," *see* GBL § 687(2)(a) or "omit[ted] to state a material fact necessary in order to make the statements made . . . not misleading," *see* GBL § 687(2)(b).  The Complaint was not filed until 2012, long after the statute of limitations had expired.  Thus, the claim is time-barred.

II.  Count 9: ERISA Claims

The Defendants also seek dismissal of Plaintiff's ERISA claim as untimely and failing to state a claim because it does not specify a statute.  For the reasons discussed below, dismissal at this stage is improper and must be denied.

A.  Plaintiff States a Claim Under ERISA

Although the argument that Plaintiff's ERISA claim fails to state a claim because it does not specify a statute is offered in the alternative, we consider it first.  Defendants originally argue that Count 9 should be dismissed because Plaintiff does not specify which section of ERISA forms the basis of his claim.  Defs. Mot. at 8.  Contrary to Defendants' motion, Plaintiff does not need to establish eligibility for a specific ERISA plan and thereby prove the existence of facts he may not know without the aid of discovery so long as he makes allegations consistent with an ERISA claim.  For the purposes of a motion to dismiss, a complaint must "give full notice of the

8

circumstances giving rise to the plaintiff's claim for relief," but a plaintiff need not "also correctly plead the legal theory or theories and statutory basis supporting the claim." *Torrico v. International Business Machines Corp.*, 213 F. Supp. 2d 390, 396 (S.D.N.Y. 2002) (citations and internal quotations omitted); *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1077 - 1078 (7th Cir. 1992) ("Instead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations."); *Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988) ("The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters."). This principle has not changed in the wake of plausibility pleading requirements. *Hatmaker v. Memorial Medical Center*, 619 F.3d 741, 743 (7th Cir. 2010) ("Although [*Twombly* and *Iqbal*] require that a complaint in federal court allege facts sufficient to show that the case is plausible, they do not undermine the principle that plaintiffs in federal courts are not required to plead legal theories.") (internal citations omitted).

Plaintiffs' Complaint alleges harassment prior to his termination, *see* Compl. ¶¶ 82-88, and alleges that such behavior was in response to "rightful labor organizing activity by Kim and his coworkers," *id.* ¶ 86. Taken in conjunction with the reference in Plaintiff's opposition brief to 29 U.S.C. 1140 (ERISA § 510) prohibiting interference with protected rights,[6] I find that Plaintiff provides a statutory basis for his ERISA claim.

B. Plaintiff's ERISA claim is Timely

---

[6] In relevant part, 29 U.S.C.A. § 1140 provides: "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C.A. § 301 et seq.]. . ."

As in every part of this case, Defendants' statute of limitations arguments necessarily depend on the event that triggers the start of the statute of limitations. Defendants purport to consider all three available statutes of limitations for ERISA claims but then presume that they begin to run when Plaintiff was first hired in 2000. Defs. Mot. at 7-8. Defendants' argument that an ERISA claim accrues from the moment Plaintiff became aware of the mischaracterization, *see* Defs. Reply at 3-4, also falls short because the *Downes* court came to this conclusion for a different ERISA provision, namely ERISA § 502(a)(3), 29 U.S.C.A. § 1132 (allowing civil action to enjoin any act or practice for breach of fiduciary duty).

Plaintiff also applies the incorrect statute of limitations to the claim under ERISA § 510. *See* Pl. Opp. at 8-10 (applying ERISA § 413). To take advantage of the statute, Plaintiffs cannot base his ERISA claim on his misclassification as an independent contractor. *See Downes*, *5 (claims that misclassification as independent contractor started the clock at the time she was misclassified, thus claims were time-barred under ERISA § 510 and further, misclassification is no basis for claim under § 510 thus failing to state a claim).

Unlike his fatal Franchise Sales Act claims, Plaintiff does not base his ERISA claim on his misclassification. Instead, he appears to argue that because he did not renew the purported franchise agreement, he was reclassified as an employee (assuming he was ever legitimately classified as a franchisee) starting in 2007, a classification that was in effect when he was terminated in 2010. See Pl. Opp. 13. Thus, the harassment and termination implicated his rights as an employee under ERISA.

ERISA § 510 does not specify a statute of limitations. When Congress fails to provide a statute of limitations for claims arising under federal statutes, a court must apply the limitations period of the state-law cause of action most analogous to the federal claim. *Sandberg v. KPMG*

*Peat Marwick, L.L.P.*, 111 F.3d 331, 332 -335 (2d Cir. 1997) (finding that closest analogy to ERISA § 510 is N.Y. Workers' Comp. § 120). Thus, on a claim under ERISA § 510, the statute of limitations is two years. N.Y. Work. Comp. Law § 120 (McKinney 1994) ("Any complaint alleging such an unlawful discriminatory practice must be filed within two years of the commission of such practice. . .")

It is two years, however, from the time of the "unlawful discriminatory practice, here, the time Kim was allegedly fired for attempting to engage in labor organizing activity as a SUK employee. Since he was fired in 2010, that is the year that his claim under ERISA § 510, 29 U.S.C. § 1140 arguably started to accrue. However, the point at which the allegedly unlawful decision to mistreat then fire Kim was communicated to Kim, which is not necessarily the date he was fired, is when the statute of limitations actually accrues. *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1140-41 (7th Cir. 1992) ("Because the purpose of Section 510, like intentional employment discrimination cases, is to prevent actions taken for an unlawful purpose, it is the decision [to act discriminatorily] and the participant's discovery of this decision that dictates accrual. This means that [Plaintiff's] claim accrued when [Defendant] made and communicated this decision to [Plaintiff].")

Plaintiff does not allege a specific date or month when Defendants harassed and fired him. Plaintiff filed his complaint on March 2, 2012. Depending on when he was harassed and fired in 2010, his claim is timely. In particular, because his complaint was filed fairly early in 2012, the odds are in his favor that his alleged pretextual firing in 2010 forms a timely basis for his ERISA claim. While there is no rule of law requiring amendment for a more specific date, in this instance, in the interest of justice, he should be given a chance to amend his complaint to

allege a more specific date of when he was apprised that he was being fired.  *See* Fed. R. Civ. P. 15(a)(2).

## CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss is granted as to Counts 4 and 5.  As to Count 9, the Court grants Plaintiff leave to amend his complaint to allege a more specific date on which ERISA § 510 to allow determination of the timeliness of his complaint on this Count.

SO ORDERED.

Dated:          February 22, 2013
                New York, New York

                                    United States District Judge

12