UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

JUNE-IL KIM                                    :                    3-4-14

                Plaintiff,            :          12 Civ. 1557 (ALC)

   -against-                                 :

                                                        **OPINION AND ORDER**

SUK INCORPORATED D/B/A RAINBOW LIMO,:
SEONGBAE DAN, SOONKIL CHO

                             :

                Defendants.

------------------------------------------------------------X

**ANDREW L. CARTER, United States District Judge:**

Plaintiff June-Il Kim ("Plaintiff" or "Kim") drove passengers to their requested locations in a Lincoln Town Car for a business operated by Defendants SUK Incorporated, doing business as Rainbow Limo, and Seongbae Dan ("Defendants"). Kim insists that the Defendants failed to pay him overtime under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") and unlawfully deducted his wages. Defendants now seek summary judgment dismissing Plaintiff's claims.[1]

Defendants claim exemption from the FLSA under the motor carrier exemption and the taxicab exemption. Defendants also assert that Plaintiff's state law claims for unlawful deductions should be eliminated because the deductions were for Plaintiff's benefit. Lastly, Defendants profess that if any of Plaintiff's claims survive, the two-year statute of limitations under the FLSA should apply because the violations, if any, were not willful.

---

[1] Although the third defendant, Soonkil Cho, was ostensibly served, (see Affidavit of Service, Dkt. No. 7), Cho has not joined in this motion or otherwise made an appearance. The affidavit of service suggests that Cho was not personally served but that Defendant Dan accepted service on his behalf at SUK after repeated attempts to personally serve Cho at work and Dan's refusal to give Cho's home address. (Id.).

The motor carrier exemption does not apply because Plaintiff's car did not weigh enough or seat enough people.  Since there are genuine issues of material fact regarding the taxicab exemption and whether the wage deductions were unlawful, summary judgment on these grounds is denied.  However, Plaintiff has failed to produce enough evidence to demonstrate that the alleged FLSA violations were willful.  Accordingly, the appropriate statute of limitations is two, instead of three, years.

DISCUSSION

The Court adopts the undisputed facts of the Defendants' Rule 56.1 Statement and Plaintiff's Response thereto.  See Dkt. No. 38 ¶¶ 1-7, 9-10.  Although Defendants do not concede that Kim is an "employee" within the meaning of the FLSA, for the purposes of this motion, they assume *arguendo* that he is an employee.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no issue of material fact where the facts are irrelevant to the disposition of the matter.  Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact.  National Union Fire Ins. Co. of Pittsburgh, Pa. v. Walton Ins. Ltd., 696 F. Supp. 897, 900 (S.D.N.Y. 1988).

The burden lies with the moving party to demonstrate the absence of any genuine issue of material fact and all inferences and ambiguities are to be resolved in favor of the nonmoving party.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Hotel Employees & Rest. Employees Union, Local 100 of New York, N.Y. & Vicinity, AFL-CIO v. City of New York Dep't of Parks & Recreation, 311 F.3d 534, 543 (2d Cir. 2002).   Once

the moving party meets its burden of showing the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact. F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, a party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If "no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994).

Defendants seek dismissal of the remaining claims of the complaint contending that they qualify for the "motor carrier" exemption under which motor carriers are not responsible for overtime compensation over the maximum hours worked pursuant to 29 U.S.C. § 207.[2] They also contend that they qualify for the "taxicab exemption" because the taxicab drivers do not receive overtime compensation. 29 U.S.C. § 213(b)(17). Based on the submissions of the parties and review of current law, Defendants are not eligible for either exemption and their motion for summary judgment is denied.

Exemptions to a remedial law like the FLSA are to be "narrowly construed against the

---

[2] The "maximum hours" provision of the FLSA provides:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek . . . is employed in an enterprise engaged in commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

employers seeking to assert them." Arnold v. Ben Kanowsky Inc., 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960). Furthermore, the employer invoking the exemption bears the burden of proving that its employees fall within the exemption. Reiseck v. Universal Communications of Miami, Inc., 591 F.3d 101 (2d Cir. 2010) (citing Bilyou v. Dutchess Beer Distribs., Inc., 300 F.3d 217, 222 (2d Cir. 2002)); Powell v. Carey Intern., Inc., 490 F. Supp. 2d 1202, 1208 (S.D. Fla. 2006) (burden to establish applicability by the preponderance of the evidence).

Motor Carrier Exemption

There is no basis to conclude that SUK qualified for the motor carrier exemption, which from 2006 to 2008 was limited to commercial vehicles (which Kim did not operate) and from 2008 to 2010, legislative amendment excepted drivers of small vehicles from the motor carrier exemption, foreclosing Defendants' summary judgment on this basis.

Under the so-called "motor carrier" exemption, an employee is not eligible for overtime compensation if the employer is a "motor carrier" providing interstate transportation. See 29 U.S.C. § 213(b)(1) ("The provisions of section 207 [maximum hours requirements] of this title shall not apply with respect to. . . any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service [for employees of. . . a motor carrier].") A motor carrier is "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). Thus, the relevant inquiry is whether "the Secretary of Transportation is authorized under the Motor Carrier Act to set maximum work hours for an employee." Fox v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC, 865 F. Supp. 2d 257, 264 (E.D.N.Y. 2012). If so, "the FLSA's overtime provisions do not apply to that employee." Id. "[I]t is the existence of the *power* to set to set maximum hours, not its actual exercise, that triggers the motor carrier exemption." Id. (emphasis in original) (citations

omitted).

There is no dispute that during the entire period Kim worked for Defendants, he drove a Lincoln Town Car to provide transportation services.  (Rule 56.1 Stmt ¶ 10).  Specifically, Kim drove a 2003 Lincoln Town Car from 2006 to 2009 and drove a 2008 Lincoln Town Car from 2009 to 2010.  (Declaration of June-Il Kim dated June 24, 2013 ("Kim Decl.") ¶¶ 2-3).  These cars weigh 4222 pounds and seat five people.  (Declaration of HyoSung Bidol-Lee dated June 24, 2013 ("Bidol-Lee Decl.") ¶¶ 3-5 & Exhibits 2-4; Kim Decl. ¶ 4).

Given these facts, it is apparent that defendants do not qualify for the motor carrier exemption because between 2006 and 2008, the motor carrier exemption only applied to commercial motor vehicles which Mr. Kim did not operate.  See Fox v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC, 865 F. Supp. 2d 257, 267 (E.D.N.Y. 2012) (through 2008,  for the purposes of 49 U.S.C. § 31502, an "employee" was a worker whose duties directly affected the safety of operation of *commercial* motor vehicles, as defined in 49 U.S.C. § 31132(1), used in interstate transportation).  A "commercial motor vehicle" is "a self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle

> **(A)** has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater;
>
> **(B)** is designed or used to transport more than 8 passengers (including the driver) for compensation;
>
> **(C)** is designed or used to transport more than 15 passengers, including the driver, and is not used to transport passengers for compensation; or
>
> **(D)** is used in transporting material found by the Secretary of Transportation to be hazardous. . ."

49 U.S.C. § 31132(1). Kim did not operate a commercial motor vehicle therefore the motor

vehicle exemption did not apply for his employment through 2008.

Then between 2008 and 2010, Kim qualified for the "small vehicle" exception to the

motor carrier exemption adopted in the SAFETEA-LU Technical Corrections Act of 2008

("TCA"), Pub.L. 110-244, Title III, § 306. Plaintiff's Opp. Ex. 1. The TCA revised the

applicability of FLSA protection and excluded "covered employees" from the motor carrier

exemption. The TCA provides as follows: "Beginning on the date of enactment of this Act [June

6, 2008], section 7 of the Fair Labor Standards Act of 1938 (29 U.S.C. § 207) shall apply to a

covered employee notwithstanding section 13(b)(1) of that Act [*i.e.*, the motor carrier

exemption]." P.L. 110-244, Title III, § 306(a). A "covered employee," then, still receives the

benefit of maximum hour protection under 29 U.S.C. § 207. A covered employee is:

> "an individual--
> "(1) who is employed by a motor carrier or motor private carrier. . . [w]hose
> work, in whole or in part, is defined--
> "(A) as that of a driver, driver's helper, loader, or mechanic; and
> "(B) As affecting the safety of operation of motor vehicles weighing 10,000
> pounds or less in transportation on public highways in interstate or foreign
> commerce, except vehicles--
> "(i) designed or used to transport more than 8 passengers (including the driver)
> for compensation;
> "(ii) designed or used to transport more than 15 passengers (including the driver)
> and not used to transport passengers for compensation; or
> "(iii) used in transporting material found by the Secretary of Transportation to be
> hazardous. . . and
> "(3) who performs duties on motor vehicles weighing 10,000 pounds or less.

P.L. 110-244, Title III, § 306(c).

Kim was a presumed employee, namely a driver, of a motor carrier, Rainbow Limo.

Again, Kim's Lincoln Town Car weighed less than 10,000 pounds and was designed to transport

no more than five passengers, below the statutory requirement for exemption. Defendants have

not adduced any evidence that Kim operated a motor vehicle to transport hazardous material.

Thus, at all relevant times, the motor carrier exemption does not apply, foreclosing summary judgment for the Defendants.

Taxicab Exemption

Defendants also contend that they are not liable for overtime compensation under the taxicab exemption. 29 U.S.C. § 213(b)(17) ("The provisions of section 207 of this title shall not apply with respect to. . . any driver employed by an employer engaged in the business of operating taxicabs."). Their basis for the taxicab exemption is a close reading of the one case in this Circuit that has decided this issue, Cariani v. D.L.C. Limousine Service, Inc., 363 F. Supp. 2d 637 (S.D.N.Y. 2005), which relied heavily on Department of Labor's definition for the "business of operating taxi cabs." Although this is a closer call, it is ultimately a fact-specific inquiry that should not be decided on summary judgment.

In applying the taxicab exemption, courts have turned to Chapter 24h of the Department of Labor ("DOL") Field Operations Handbook, which offers the following definition of "business of operating taxicabs":

> The taxicab business consists normally of common carrier transportation in small motor vehicles of persons and such property as they may carry with them to any requested destination in the community. The business operates without fixed routes or contracts for recurrent transportation. It serves the miscellaneous and predominately local transportation need of the community. It may include such occasional and unscheduled trips to or from transportation terminals as the individual passengers may request, and may include stands at the transportation terminals as well as at other places where numerous demands for taxicab transportation may be expected.

DOL Field Operations Handbook 24h01.

Focusing almost entirely on the DOL definition to resolve inconsistent outcomes in limited case law, Cariani found that the defendant taxi and limousine service fit within the taxicab exemption because: (1) its drivers did not cover fixed routes or adhere to fixed schedules;

(2) it offered door-to-door service with the time of the trip and the destination determined by the customer; (3) it was not under contract with any airline or other company; and (4) its fares were equivalent to the fares of taxi companies.  Id. at 644.  But in doing so, it gave less credence to the fact, inter alia, the Defendant was not regulated as a taxi company and did not allow its drivers to cruise for passengers.  Id. at 645.

SUK operates a business which could be seen as a taxicab business because it takes passengers to whatever destination they request, does not operate on fixed routes, and does not take multiple fares at the same time.  However, unlike a taxicab, it does not have a metered fare and maintains contracts with repeat customers.  Here, as a driver for Rainbow Limo, Plaintiff held a For-Hire Vehicle License from the New York City Taxi and Limousine Commission, not a Taxi Medallion.  (See Declaration of Chad L. Edgar Ex. B).  Furthermore, unlike Cariani which considered a taxi and limousine service in Westchester County and acknowledged the rarity of cab drivers that cruise for fares, Defendants operate out of New York City, in midtown Manhattan, where hailing a taxi is a time-honored tradition, the rule, not the exception.  Surely, this contextual difference urges a different conclusion than that in New York City they are taxicabs one and all.  "[W]hile these factors are not specifically mentioned in the Department of Labor's definition of "business of operating a taxicab," and thus may be of less significance, they nevertheless weigh against a finding" that Defendants have met their burden that the taxicab exemption applies.  Powell, 490 F. Supp. 2d at 1213.  Thus, summary judgment is denied.

Because I deny summary judgment under the motor carrier exemption as well as the taxicab exemption, Defendants' request to dismiss the two state law claims under the court's discretion not to exercise supplemental jurisdiction is also denied.

Unlawful Deductions

8

Count 3 concerns Plaintiff's state-law claim that Defendants took unlawful deductions from Kim's pay. Specifically, based on the franchise agreement defendants took 23 percent of every fare and under the subcontract agreement they took $82 per month for lease of a radio. Defendants seek dismissal on the ground that these deductions were authorized and inured to Plaintiff's benefit.

The unlawful deductions provision of the New York Labor Law in effect at the time of Plaintiff's employment with Rainbow Limo provides: "No employer shall make any deduction from the wages of an employee, except deductions which. . . are expressly authorized in writing by the employee and are for the benefit of the employee; provided that such authorization is kept on file on the employer's premises." N.Y. Labor Law § 193(b) (2007). At the time of the alleged signing of the franchise agreement and sub-contract agreement as well as at the time the complaint was filed, there was no requirement of voluntariness or of written notice of terms and conditions. [3] Nevertheless, because there is a question of material fact whether these deductions were "for the benefit of the employee," Defendants' motion for summary judgment on the unlawful deductions claim is denied.

Focusing only on the Sub-Contract Agreement by which Plaintiff allegedly agreed to the radio deduction, (see Affidavit of Seongbae Dan ("Dan Aff.") Ex. C, "Sub-Contract"), summary

---

[3] The current version, which became effective November 6, 2012, requires that any deductions under this exception "are expressly authorized in writing by the employee and are for the benefit of the employee, provided that such authorization is voluntary and only given following receipt by the employee of written notice of all terms and conditions of the payment and/or its benefits and the details of the manner in which deductions will be made. . ." N.Y. Labor Law § 193(b) (2014). However, because there is no indication that the New York State Legislature sought the revision to have retroactive effect, I apply the version that existed when Kim was in Defendants' employ. See CFCU Community Credit Union v. Hayward, 552 F.3d 253, 262 (2d Cir. 2009) ("Simply put, there must be a "clear" expression of legislative intent to apply a statute retroactively.") (citing Majewski v. Broadalbin-Perth Cent. School Dist., 91 N.Y.2d 577, 589, 673 N.Y.S.2d 966, 696 N.E.2d 978 (1998)); Fox, 865 F. Supp. 2d at 264 n.9

judgment that these deductions were to Plaintiff's benefit is clearly inappropriate.  The

subcontract provided as follows for the payment of "Radio Money":

> Driver shall make one time payment in the amount of Ten Thousand ($10,000.00)
> Dollars to the Company to be held to insure the performance of Driver's
> obligations under this agreement.  Also this Radio Money is non-refundable,
> representing Company's administrative money.

> Driver agrees to be responsible for the proper usage, repairs of radio and agrees to
> pay the Company the sum of Nine Hundred Sixty ($960.00) Dollars for each year
> or Eighty-Two ($82.00) Dollars for each month for the use of a radio, which sum
> could vary depending on the communication costs.

(Dan Aff. Ex. C, Sub-Contract § 2).

At first glance, it appears that the payment of "Radio Money" is not more than a

deposit—albeit hefty—for the dispatch radio.  However, the next sentence explains that this is

actually an investment, as the deposit is non-refundable.  Furthermore, drivers such as Plaintiff

were responsible for repairs to the radio and then still paid a monthly lease for the radio.  (Dan

Aff. Ex. C, Sub-contract § 2).  The sum of the subcontract and the radio deduction is a never-

ending payment plan for a radio that Plaintiff could only escape if he exercised his right to sell,

transfer or assign the agreement, which was itself subject to more fees.  (See id. § 3).

Although Defendants construe use of the radio as a benefit to Plaintiff, the employer

benefited just as much, if not more, because Rainbow Limo dispatchers could not easily

communicate with its drivers, including Plaintiff, without it.  Defendants suggest, in the limited

sections of Kim's deposition they provide to this Court, that Plaintiff spent many hours in his car

unnecessarily.  (See Reply Declaration of Chad L. Edgar Ex. A. at 97:8-13).  Yet despite the fact

that the radio was always in his car, he spent much of his time waiting to hear from dispatch, not

actively getting fares.  (Id. at 97:15-25).  If the radio were so much to his benefit, Kim could

have spent more time seeking fares and less time waiting.  Instead, the radio was used so that

Defendants could easily reach their drivers, including Plaintiff, to offer transportation services on Defendants' behalf. See Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 252 (S.D.N.Y. 2008) (fines allegedly taken to supply lunch and dinner to deliverymen did not benefit the employees because "the only function of the fines was to add to the defendants' coffers, not to provide food that was already being made available" so deliverymen could remain on site to be available to make deliveries).  On this record, these deductions may be for the benefit of the employer, rather than for the benefit of the employee, and thus could constitute unlawful deductions in violation of New York Labor Law.  Defendants' summary judgment motion is properly denied.

Willful Violation

Defendants contend that Plaintiff has not established that the FLSA violation was willful and therefore the statute of limitations is properly limited to two years, instead of the three years permitted for a willful violation.  Defendants further argue that if there is no showing of willfulness on the FLSA claim, liquidated damages under NYLL should similarly be denied for claims before November 24, 2009 because the NYLL liquidated damages provision in effect through that date required a showing of willfulness that "[did] not appreciably differ from the FLSA's willfulness standard," Kuebel v. Black & Decker Inc., 643 F.3d 352, 366 (2d Cir. 2011) (internal quotation marks and citations omitted).[4]  (See Mem. at 15 n. 2).

---

[4] The NYLL liquidated damages provision, section 198(1-a), was amended in 2009 and then again in 2011, and now provides that an employee who prevails on a wage claim is entitled to liquidated damages equal to 100% of the amount of wages found to be due "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." Kuebel, 643 F.3d at 366 n.9 (quoting N.Y. Labor Law § 198(1–a) (2011)).  However, this amendment does not have retroactive effect, since neither its text nor its legislative history mentioned retroactivity. Gold v. New York Life Ins. Co., 730 F.3d 137, 143-44 (2d Cir. 2013).

The statute of limitations to bring an FLSA claim is two years, but if an FLSA violation is found to be "willful," a three-year limitations period applies.  29 U.S.C. § 255(a).  A willful violation is one where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).  Proof of willfulness requires a "factual showing" of an employer's knowing or reckless violation of the FLSA. Clarke v. JPMorgan Chase Bank, N.A., No. 08 Civ. 2400(CM)(DCF), 2010 WL 1379778, at *10 (S.D.N.Y. March 26, 2010) (citing Saunders v. City of N.Y., 594 F. Supp. 2d 346, 358 (S.D.N.Y. 2008).

An FLSA plaintiff bears the burden of proving willfulness. Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009).  To do so, a plaintiff must "make a competent demonstration that there is a trialworthy issue as to whether the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Clarke, 2010 WL 1379778 at *10 (internal quotation marks, citations and alterations omitted). "Reckless disregard. . . involves actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation." Damassia v. Duane Reade, Inc., No. 04 Civ. 8819(GEL), 2005 WL 1214337, at *3 n.2 (S.D.N.Y. May 20, 2005) (Lynch, J.); see Jin M. Cao v. Wu Liang Ye Lexington Restaurant, Inc., No. 08 Civ. 3725(DC), 2010 WL 4159391, at *6 (S.D.N.Y. Sept. 30, 2010) (finding recklessness, despite employers' assertion that they were unaware of the wage and hour laws, because their ignorance amounted to reckless disregard "[g]iven their many years in the restaurant industry").  Nevertheless, a willful violation requires more than mere negligence. Hazen Paper Co. v. Biggens, 507 U.S. 604, 615 (1993) (standard of willfulness understood to refer to conduct that is not merely negligent); Damassia, 2005 WL

1214337, at *3 n.2 ("[P]laintiffs must prove more than that defendant 'should have known' it was violating the law.").

All that Plaintiff has done to support his claim of willfulness is to rehash the questionable conditions under which the franchise agreement was allegedly signed and mention the Defendants' failure to post required labor notices or consult an attorney on their FLSA responsibilities.  (Opp. at 17).  At best, this is negligence, but a willful violation requires more. Even "[i]f an employer acts unreasonably, but not recklessly, in determining its legal obligation. . . it should not be. . .  considered [willful]". McLaughlin, 486 U.S. 134 n.13.  Because Plaintiff does not establish willfulness, the standard two-year statute of limitations for his FLSA claims applies.  Moreover, because the NYLL liquidated damages provision in effect during Plaintiff's time at Rainbow Limo required a showing of willfulness that "[did] not appreciably differ from the FLSA's willfulness standard," Kuebel, 643 F.3d at 366, Plaintiff is not entitled to liquidated damages before November 24, 2009, when the current version of the law became effective.

CONCLUSION

Defendant's motion for summary judgment (Dkt. No. 28) is GRANTED in part and DENIED in part consistent with this order.


SO ORDERED.

Dated:      March 4, 2014
            New York, New York

**ANDREW L. CARTER, JR.**
United States District Judge